The court, David Frederick, for the Taub claimants. Revlon knew when it filed for bankruptcy that it would face liabilities for future asbestos claimants. Yet it nonetheless chose not to use Section 524G to create a trust to protect them. It now claims to be able to discharge future asbestos liabilities in the way that 524G protects without shouldering the burdens that 524G imposes. They cite no case for that proposition. Indeed, it's contrary to the history of asbestos. There are more than 70 asbestos trusts with tens of billions of dollars to protect future claimants. This court went on a 40-year odyssey in Johns Manville to ensure that there would be protections for future claimants, and now Revlon says that was all unnecessary. Its position renders superfluous the carefully enacted provisions Congress did to mirror what the courts in this circuit imposed over a multi-decade period. So with regard to what Congress has crafted, one thing that, one question that comes to my mind is in the language of 524G, what is there that supports this argument that, this exclusivity argument you're making? There is no way to protect the due process rights of the future claimants without using the specific mechanisms. And that's why, even though there is permissive language about supplementing the injunction by May adding these provisions, that simply gives discretion to bankruptcy courts to ensure that if there are other ways of protecting the due process interests of future claimants, those are not foreclosed. And we can't do that. I guess I was even beyond sort of this whole issue of what does May mean. Is there some language that affirmatively suggests this is the only mechanism by which this can occur? So the Third Circuit in Combustion Engineering, in a case they ignore, says, quote, to come through a Chapter 11 reorganization that, quote, relieves the debtor of the uncertainty of future asbestos liabilities, a debtor, quote, must satisfy the prerequisite set forth in 524G in addition to the standard plan confirmation requirements. Now, Judge Lee, I think the best way to answer your question is that when this court was dealing with the Johns Manville problem, it knew that there was future liabilities for people that had not been diagnosed with asbestos-related diseases, but they had been exposed to asbestos before Johns Manville filed for bankruptcy. And what the court did was it upheld the bankruptcy's creation of a trust to deal with future claimants and a channeling mechanism so that it, Johns Manville, could come through bankruptcy as a reorganized debtor, but not face the liabilities of those future claimants. Here, what Revlon is seeking to do is to come through the bankruptcy, but to expunge claims that it knew were going to be filed against it because of the talc contained in its products. And so what 524G, I think, has to be understood in the context, the historical context in which this court inspired Congress to enact these provisions. And the Third Circuit, not only in Combustion Engineering, but in W.R. Grace and in Grossman's, made very clear that for a debtor that had faced asbestos liabilities, if it wanted to discharge future claimant claims, this was the only mechanism to do that. Prior to 524G, given that there were cases that had these discharges of future claimants, perhaps not in the asbestos context, it seems like your interpretation of it is, in fact, saying that 524G has changed or impacts other provisions of the code, which would seem to go against the rule of construction saying that, no, actually, this should not be interpreted to impair or modify other provisions. So the rule of construction doesn't apply here for a couple of reasons. One is that it says it doesn't affect other authorities that are embedded in the  The problem with Johns Manville exposed was there are no other provisions in the code to deal with this unique asbestos latency problem of future claimant liabilities. And it was the... But you're separating out, I guess, just to be clear on your position, there were other provisions in the code that allowed discharge of future claims, not specific to asbestos, but just general discharge provisions in the bankruptcy code that hadn't been applied to discharge future claims. Well, I think that... I want to be careful, Judge Lee, in how I answer this because asbestos has always been viewed as a unique problem. Where those claims had arisen before the bankruptcy but were going to manifest later, courts had used equitable powers to deal with them. But there was a lot of controversy over that. There's a famous Judge Posner opinion called UNR, which they also don't acknowledge, which talks about the uncertainties in the asbestos context precisely because it may be 40 years after exposure before someone manifests disease symptoms. And it was that unique asbestos problem that was designed to be dealt with in 524G. And so what this legislative history to 524G says is we're not intending to foreclose other possible interpretations in other areas dealing with other problems, but we have a specific problem with asbestos. And that is what we are going to try to deal with here because it's the only way to ensure that the due process rights of future claimants who would never know that they are interested in bankruptcies like Revlon's would have no reason to come forward to make a claim because they weren't sick. So you're talking about the uniqueness of the asbestos context, and obviously with respect to your statutory argument about Section 524, that is unique to asbestos. But it seems to me your due process argument could have much more wide-ranging implications. You know, the long latency problem exists not only with respect to asbestos, but to pharma products, to childhood sexual assault, to a number of other contexts. And is that a fair reading of your due process argument, that existing but unknown liabilities in those contexts could not be discharged absent the kind of notice that you're demanding here? Your Honor, all due process cases turn on the facts and circumstances as presented, and the Moline test is what is the appropriate notice and opportunity to be heard in that specific context. I do not want to foreclose the fact that generalized notices in three newspapers on one day that say nothing about the product, the disease, or anything else that would provide reasonable opportunity for anybody to come forward would not be sufficient. It might well be insufficient. But I think that this Court So the rule you're positing is if a pharmaceutical company with a diversified portfolio of drugs wants to declare bankruptcy, it has to, in the notice, specify every potential long latency drug it knows or should know about or problem with respect to each individual drug in the portfolio. I think the degree of specificity is one that would need to be dealt with on the specific facts. If there was a large problem that had been manifested in many claims, that might give rise to more notice and information than, say, a one-off side effect illness that had only been experienced once or twice. But the point is that But aren't you arguing against yourself a little bit there? Because the more widely something's been litigated and reported on, the less need for notice there is. Not if the person hasn't experienced a side effect yet. If the latency is I understood your initial hypothetical was that there was a latency and here the problem with asbestos is the very long latency period that we're having to address and deal with. But, Your Honor, I think that the way to understand both of these issues, how they fit together, was that 524G was designed to protect the due process rights of the future claimants. And so when you get to the due process issue in this case, there are a number of questions. How would this apply in other contexts? And this was one of the worst notices, I think, in the history of notices in bankruptcy because it didn't tell anybody what the product was, what the disease was, how often they needed to take it, anything. And so no one could predict in the future I'm going to have an asbestos-related disease, so therefore I must file a claim in a bankruptcy. It was completely impossible for someone to do that. And it was that very problem that Judge Posner put his finger on in UNR when he talked about the asbestos claims and why they needed to be dealt with differently because no one who is exposed to asbestos will necessarily know in the future whether he or she is going to experience a problem. So what is the trigger for that more specific notice? If Revlon can't just say in the notice, we are Revlon and we're declaring bankruptcy, but they have to go a step further and say, we are also the manufacturer of brand name X talcum powder and we know that people think that may cause the following long latency diseases, when has a potential problem burgeoned or ripened to the point where this is required? So the way the courts have dealt with this is to have future claims representatives. But not for every possible kind of future claim. So stick with my pharma hypo. Every drug in the portfolio, somebody is alleging that they developed some disease as a result. Those claims may be credible, they may not be credible. I think you're saying there's some threshold at which some number of people have to have made those claims or the science has to advance to a particular point. When is the tipping point where the more specific notice is required? I can't give you a tipping point, Your Honor. Why is the tipping point met here? Because no one would ever know, reading their notice, that they should be filing a claim if their disease did not manifest for 10 years. That is why the whole idea of a future claims representative was an innovation I'm also saying that there's some substantial science or some substantial amount of claims that tell us that this problem about talcum powder is real. And I'm asking, what's the threshold for knowing that it's real? Is it just that lots of people have already filed claims? Well, Your Honor, I would say that it's not, I don't think necessary for the court to articulate the meets and bounds of all due process problems and how they would be resolved in a bankruptcy. I just want to take that off your plate. And I'm going to accept your question as one that tries to get at how to think about the problem more generally. In the asbestos context, we know how to think about the problem because Congress enacted 524G mechanisms to help deal with it. Outside the asbestos context, what I would argue to you is that if you look at other cases that have dealt more extensively with this, they have identified products, they have identified diseases, they have given targeted audiences, even their own notice in the hair relaxer context, actually met 17,000 people where they were to try to identify whether or not they could have a potential disease from that product. And so what I would say to you is that the things that you would look at are, is there science that suggests that? Are there cases? Is there a product that has specifically identified within the bankruptcy? Are there cases that are pending? Is there a latency problem that could be exposed later on? These are all factors that go into the degree to which the notice would pass constitutional muster. This one for these asbestos victims cannot possibly pass constitutional muster because no one could reasonably know, if they have no diagnosis, that they would need to file a claim. And it was only done for one day, in three newspapers, and it didn't have anything to do with a specific product that would have been identifiable to a particular class of affected victims. Thank you. Okay. All right. I think we have your argument, and you have some time on your bucket. Thank you. Thank you, Judge Lee. I'm David Cannon-Chambingham of Paul Weiss for the Revlon Appellees. May it please the Court, the claimants in this case were unknown creditors who had potential causes of action for asbestos-related injuries that were allegedly undiagnosed at the time of the bankruptcy proceedings. Each of the challenges to the conduct of the bankruptcy proceedings here lacks merit. The Bankruptcy Code does not, by its terms, require debtors to use the elaborate procedures in Section 524G to discharge claims involving undiagnosed asbestos-related injuries. By its terms, that provision merely supplements and does not supplant the Bankruptcy Code's ordinary provisions governing the discharge of claims. And the Bankruptcy Plan did not violate due process in this case. Claimants received a paradigmatic form of publication notice as unknown creditors. And this Court should reject the effort here by the claimants to constitutionalize the procedures in Section 524G. The Bankruptcy Court wrote a thoughtful opinion here and granted debtors' motion to enforce the plan injunction, and that order should be affirmed. I'd like to start with the argument concerning Section 524G. And I think there's an important piece of underbrush that needs to be cleared away right at the outset here. My friend, Mr. Frederick, repeatedly refers to future claimants. But that phrase in this context is seriously misleading. There is no dispute before this Court, as there was no dispute before the Bankruptcy Court, that appellants, Mr. Frederick's clients, have claims as that term is defined under Section 1015 of the Bankruptcy Code. Remember that claims are defined to include rights to payment, whether or not such right is unliquidated, contingent, or unmatured. Really, in the asbestos context, if you're talking about future claims, you might be talking, for instance, about people who have not yet been exposed, and therefore do not have claims at all. That is one of the core purposes of Section 524G, after all. It covers not just claims, but demands for future payment. And so, a debtor looking to obtain the security of relief going forward from individuals who, for instance, might be exposed to asbestos contained in a wall and so forth, can get that through the mechanism of Section 524G. Now, my client, Revlon, was in a somewhat different position here from, say, Johns Manville or W.R. Grace or any of the other famous companies that faced a collapse under the weight of asbestos-related liability. Revlon's asbestos-related liability was relatively modest by the standards of these things. Our disclosures indicated that the potential liability was somewhere in the neighborhood of $50 to $100 million. And Revlon ultimately went into bankruptcy precisely because of broader macroeconomic factors in the wake of the pandemic and so forth. And so it was for that reason that Revlon opted to use the general discharge procedures of Section 524A rather than the more elaborate procedures of 524G. Now, Judge Lee, to go to your questions about the language of 524G itself, what evidence is there that Congress, when it enacted that provision in 1994, intended it to be exclusive? Well, there is no such evidence, and in fact, there is contrary evidence on the face of the statute. If you take a look at the language of the very first provision contained within 524G, Congress makes clear that an injunction under that section is intended to supplement the injunctive effect of a discharge under this section, meaning a discharge of the ordinary sort under Section 524A. There are two respects in which a 524G injunction supplements a traditional discharge with a confirmation of a bankruptcy plan. The first is in the regard I indicated earlier, which is that you obtain prospective relief from future demands as well as from claims. And the second, and importantly, is that you get the form of relief that the Supreme Court said was ordinarily not otherwise available in Purdue Pharma, which is you can get releases of third parties, which looms very large in the others. There is a policy argument, and I'm not saying that this should be the basis for decision, that Congress did have a preference for the use of 524G in these types of contexts. Looking at sort of the both parties cite sort of legislative comments and history and all of that, and again, I'm not saying that should be the basis for the decision here. But the idea that this is the preferred method for these types of claims. I mean, would you agree with that? I'm not sure that the legislative history goes so far, Judge Lee, as to indicate that 524G was a preferred method so much as it was an alternative method that came with both benefits and burdens to a debtor. The benefits are the two that I've mentioned, broader relief and also third party releases. The burdens are, you know, quite frankly that it is first more time consuming, and that was certainly a consideration that I think I can represent loomed large for my clients because the establishment of a 524G trust takes time. There are procedures that are attendant to that. And a 524G trust has meaningful long-term consequences. Take, for instance, the requirements concerning voting shares. A trust has to hold a majority of the voting shares or an equivalent in the reorganized debtor. And so... Your friend on the other side suggests, at least in the briefing, that yes, there are reasons, I guess, to use it or not, but that it's not the debtor who should get to choose, well, do I want to use 524G or not? But that's not the debtor's decision. Well, I think it is, of course, the job of a bankruptcy court to determine whether or not a plan is fair and equitable. That is an existing background principle regardless of whether you proceed with a 524G trust or not. I think my friend's brief seems to make it seem as if that only comes into play under 524G. That comes into play across the board. So, of course, a bankruptcy court, if it thinks that the resolution is not sufficient, can take steps. The bankruptcy court can actually appoint a future claims representative regardless of whether or not you're proceeding under Section 524G. Our point is simply the modest one, that the language of 524G itself is not exclusive. You alluded to the use of the permissive term may, and my friend, Mr. Frederick, has his responses on that, but every single textual cue in the statute itself suggests that this is an option and not mandatory. And I would note that we do cite authority for the proposition that courts have proceeded in asbestos cases without proceeding through the mechanisms of 524G, most notably the energy future holdings case from the Third Circuit. And I would note that it was a little bit uncharitable of my friend to chide us for not addressing Judge Posner's opinion in the UNR case in our first time in his reply brief. I think ultimately our statutory argument here really does rest on the language of the section, and I would note that there is no court to date in the now more than 30 years since the enactment of 524G that has in any way suggested it's exclusive. I do want to turn to the due process argument because there were a number of questions about that. I think I'll start with Judge Comittee's question concerning the scope of my friend's argument. I think, Your Honor, you made the very reasonable point that there are many types of conditions that fit this paradigm where you might have exposure and therefore a claim under the bankruptcy code, but you may not yet have been diagnosed. You may not have had symptoms. We cite a number of those contexts from pages 45 to 48 of our brief, everything from environmental toxins to cases involving ignition switches in cars that might not yet have broken down to cases involving antitrust conspiracies and the like. And your question was, what is the limiting principle? Well, my friend resorted to facts and circumstances. But I think the critical facts in all of these cases are the same. These are situations where individuals might not know yet that they have a claim because their cause of action may not have accrued under state law. They may not yet have suffered injury. Now, I would note parenthetically, and this goes to some of the follow-up questions, that this is certainly a context in which if you had had exposure to a product containing talc, you would have good reason to think that you might have a claim because talc-related asbestos claims is undisputed, were, as you put it, widely litigated and reported on at the relevant time. Now, I think that that fact counts in our favor because this is not a circumstance in which an individual who had had exposure would have no idea that they would have a potential claim in this context. At most, they may not yet have had a diagnosis, though I would note parenthetically that of the 40 or so people represented by my friend, Mr. Frederick, if you take a look at Joint Appendix 1370 to 1371, all but one of them, in fact, ended up being diagnosed by the outer deadline date of February 29th, 2024 that was set by the trustee. But leave that aside. That's just a factual nicety for purposes of the due process argument here. Our critical point is that individuals who had had exposure could easily be on constructive notice, and part of the reason that we know that is that there were a fair number of claims that were actually filed. There were somewhere in the neighborhood of approximately 337 claims that were filed in the bankruptcy proceeding here. It included individuals who had been diagnosed, individuals who were proceeding with claims based on loss of consortium. So claims, in fact, were filed in the wake of this notice. As to the notice itself, I just want to make a couple of points. The first is that publication notice, of course, is the paradigmatic form of notice, as I indicated at the outset, where what you're doing is providing notice to unknown creditors and attempting to put that class of unknown creditors on constructive notice. The language of the notice here, far from being the most outrageous in the history of the bankruptcy system, was fairly unremarkable in that it could not have been broader, and I would invite the court to look at the notice. It's at page 208. It indicated that any person that seeks to assert a claim that arose or is deemed to have arisen prior to the petition date, no matter how remote or contingent such right to payment or equitable remedy may be, including claims for potential unmatured injuries, must file a proof of claim by the date, and I did not hear my friend to suggest that his client's claims did not fall within the scope of that language. Instead — I'm sorry. A quick question just to follow up on the point I understood Judge Lee to be making. How do the incentives work? I think you're saying the only one of the parties who might have an incentive to invoke Section 524G is the debtor itself, because it might get some protection once it's operating as a reorganized company, but it has substantial disincentives also, right? It has to turn over its voting shares and fund future claims. What was it in John's ban bill that made Section 524G attractive that was not operating the same way here? Yeah. And why, if we uphold all your arguments here, why wouldn't that essentially be the end of Section 524G, given that most of the big asbestos manufacturers are out of business now? Well, certainly there are, thankfully, fewer of these cases now than there were in the heyday of this litigation. But I think when you look at the dozens of cases where there have been these requests that my friend, Mr. Frederick, referred to, they are typically cases where the asbestos liability is crushing and ongoing. In other words, where you're talking about asbestos liability that far outstrips the assets of the debtor, where you have the potential for long-term liability. Note that Revlon is a little bit different from, say, the company with asbestos in the wall, because with these talc-related products, it's not as if they're likely to sit on the shelf for decades and then someone's going to have exposure. So when you're talking about demands for purposes of Section 524G, in that context, you're not talking about some enormous category of liability. Obviously, you could be talking about an enormous category of liability with regard to the more familiar types of products containing asbestos. But I think with regard to the due process argument, I just want to say a couple of things to kind of button that up. The first is that I really think the core of the argument from the other side, as the briefing has evolved, is not so much that we should have published this in three newspapers or four newspapers or five newspapers or newspapers over two or three days. It is that we had a requirement to make some sort of disclosure concerning this specific category of claim. But that really runs foursquare into the case law. We cite a variety of cases for the proposition that bankruptcy notices do not need to describe the character or notice of the particular claims. That was certainly true in the Placid Oil case from the Fifth Circuit, which by its term said that a notice did not need to mention potential asbestos claims. And I really have a hard time understanding the other side's effort to distinguish it. They say that Placid Oil had not yet been named in asbestos-related suits, but the opinion itself says that the debtor had reason to know of potential asbestos-related claims. We cite a variety of other cases at pages 32 to 33 of our brief for that proposition. And you run a very real risk, both that it seems a little bit counterintuitive to say that a debtor has to tell would-be plaintiffs about the substance of their causes of action themselves in a context where the debtor obviously vigorously disputes them, and second, that it's hard to know where the limiting principle for that is. And there's a very real risk, as we explain in our brief, that the notices are going to become too dense or voluminous. And that leaves us with the last component of Appellant's due process argument, which is that leaving aside the details of the notice, that some component of the 524G procedure is constitutionally mandated. And they seem to be focusing in particular on the use of future claims representatives. And in our view, that is simply not a constitutional requirement. There would be no limiting principle for that, because that could be said to be unnecessary in any case involving a latent form of injury. And again, the Bankruptcy Court is the ultimate backstop here, because the Bankruptcy Court's obligation is to make sure that the settlement is fair and equitable. Ultimately, the whole point of bankruptcy, of course, is to give a debtor a fresh start. What we're talking about with regard to these claimants is, of course, unsecured creditors. In this particular case, the trustee has at its disposal around $16 million in funds, which are being disbursed right now to individuals who filed their claim in a timely fashion. And appellants here cannot be heard to complain when the notice that we provided in this context was the familiar form of notice in bankruptcy proceedings for unknown creditors. So we would ask that the Bankruptcy Court's order be affirmed, unless there are any further questions. Okay. Thank you, Mr. Shem again. Judge Lee, if I could start with your question. The statute says a court may issue these supplemental forms of injunction. The issue before you is whether the Bankruptcy Court abused its discretion by allowing this bankruptcy to be confirmed without letting the future claimant's claims pass through the bankruptcy, which is a routinely done thing. If the problem is not as significant financially to Revlon as Mr. Shem again claims, then let the claims pass through. That's the whole point, that the discharge should not be operable for these claims. Your Honor, you asked the question, what was the whole point of John's manville if this is going to be the end of 524G? And that is the specter of this case. If these problems are not significant, they can pass through the bankruptcy no problem. If they are significant, 524G provides a specific means of dealing with them over the general provision of the discharge. And Radlax in the Supreme Court, in a very comparable situation, said the specific provisions of the Bankruptcy Code are designed to guide over the general ones where there is some ambiguity or disagreement. This is not a question about preference so much as it is, Your Honor, about whether the policy of the statute helps to protect the due process interests of the future claimants. I use future claimants in the bankruptcy vernacular because it's the way of understanding these are all people who had a claim because they were exposed to the asbestos before the bankruptcy was filed, but they were not diagnosed until afterwards. And the diagnoses here, it's undisputed, are after the bankruptcy filing. No case supports Revlon. They cite Placid Oil and Chautauquais, but those are cases in which the debtor could not qualify for 524G because one of the requirements under 524G2BiI is that it be a defendant in asbestos-related litigation. And if the debtor had not been a defendant, it could not invoke a 524G plan. So the cases that they're citing are not on point to the situation we have here where Revlon did face liabilities, it did face cases, it was a defendant, and yet it nonetheless did not use the processes and the court did not impose on Revlon the processes that Congress specified in 524G. They do not answer the superfluity principle problem of their case, which is that if a debtor could get away with what Revlon is doing, no one would ever invoke 524G because you could just wipe the slate clean of all future claims and not ever have to worry about them. That's the whole problem with their position here. It is as though this Court went through the Johns Manville experience and it's all a big never mind. Johns Manville didn't have to do that. It could have used 524A and just wiped the slate clean of literally tens of thousands of future claims. This Court had the wisdom to understand the constitutional problems with that idea and it rejected that. Congress mirrored what this Court had done and put it into a statute. And it's crazy to think that it was all irrelevant. Thank you.